We have a full calendar of argued cases this morning. We'll be hearing six cases. I have been informed by the clerk of court that we have, that everyone's here on all the cases, and so I'm going to dispense with reading the calendar in order to facilitate us moving promptly through it. I believe we're ready to begin on our first case, which is United States v. Carol Lisa Gutman. Good morning, Your Honors. Paul Connolly, representing Carol Lisa Gutman. I'd like to first turn to the jury instruction issue in this case. The first jury note contained a request, and the first request it contained was for the definition of atypical affective disorder. There was evidence of that condition in the record, but no evidence of its definition. There was reason in the record to conclude that this condition, atypical affective disorder, was significant to Ms. Gutman's diagnosis, that it was significant to the reason why she was unable to work. But you don't contend that the judge should have given a definition out of a medical dictionary or out of his own head, do you? I do not. It's true, is it not, that the defense did not ask anyone . . . there's nothing in the record that defines the syndrome or illness? Correct. What you're complaining about is that the judge said, besides saying, no, I can't give you that, said, you don't need that. Is that inaccurate? Did they need that to decide the case? Yes. Our position is that it is inaccurate in that the jury could readily interpret that to mean that the condition, the evidence of the condition in the record, was not significant to its deliberations. Well, he didn't say that. No, he did not say that. He said, you don't need a definition. I agree, Your Honor. He did not say that. And we're not . . . obviously, I'm not contending that he said that, because he didn't. Yes. He said that, you don't need a definition of this. It's not . . . I mean, the exact language is . . . Your point, I take it, is that it was conceivably misleading, and you asked him to clarify it, and he declined. Yes. I submit that it was . . . I mean, I wouldn't use the word conceivably. I would submit that to an ordinary person, asking that question, when they get a response saying, oh, you don't need that definition. That's one interpretation. What he literally said was, if you look at the elements of each of the charges, I don't know if it's really necessary that you have a definition of that anyway. And you're saying that the jury would necessarily have understood that to mean it's irrelevant. Your Honor, respectfully, I don't want to say what the jury would . . . how the jury would necessarily have understood it, but I don't think that's necessary to my argument. My argument is that it would be reasonable for the jury to construe that to mean that the evidence in the record of atypical affective disorder was not significant. But why would you think that? After all, the immediately preceding sentence is, you have to rely upon whatever the evidence has been that's been produced. And there was evidence that there was such a syndrome, and I take it there was at least . . . was there not something about possible effects or something like that, that the defense expert said? Yes. Yes, there was evidence of the possible effects of atypical . . . Right. So what was necessary for the jury was to look at the evidence and see whether what they were told, if they believed it, about the possible effects of . . . it could be called anything . . . would have on Ms. Gutman's actions and beliefs and words. And that's what they're supposed to look at. They don't need a definition of the term. I submit that an ordinary layperson juror, in hearing the court's response to their request, could very readily construe that to mean that the evidence of this condition is not significant. And I would point out that the judge himself, clearly in the record, where there's a colloquy about this . . . outside the presence of the jury. And the jury never heard that, where the judge was dismissive of the effects of this syndrome on the case, or the relevance of it to the case. But that's not what he . . . he didn't say anything like that to the jury. Right? I mean, I don't want to cross-contaminate the jury instruction with the colloquy. Yeah. But should . . . you're saying I should? I should pay attention to the colloquy in interpreting this? Let me just say that I hope I didn't suggest that he . . . I mean, I know what he said. We know what he said, that's clear. Yes. To the jury, and we know what he said to the attorneys. So, we do . . . in this case, we happen to know what the judge was thinking. And he was thinking, I submit, for the wrong reasons, that this evidence was not relevant. Indeed, I . . . And I take it your point is that at least one reasonable reading of this statement is, you don't have to worry about this, the suggestion being that it's irrelevant, even though he didn't use those words. Now, that may not be the only possible reading, but then you asked him to clarify it, and because of what we now know is his misunderstanding, he declined to clarify it. So, my question to you is, since what he said was probably literally true, but conceivably suggested something that was misleading, how does that rise to the . . . even with your suggestion that he clarify it, to anything other than a passing mistake, but nothing of consequence? Well, because the . . . They still had all the evidence that you're relying on that went to intent, whether they had their definition or not. Because, Your Honor, the jury, for reasons that I've explained, I hope clearly in my brief, could have attached a great deal of significance to the atypical affective disorder evidence. You had the evidence that, in the record, that she suffered from the disorder. You had the evidence that it affected one's perception. It could affect one's perception of pain. The defense counsel could have summed up, you know that this disorder affects perceptions of pain. Someone afflicted by these perceptions, a distortion in their perception of pain, might have thought that they were more disabled than they are, might have been unable to perceive their physical abilities, and so this raises a reasonable doubt about intent. All that's still open to the defense on summation, right? I mean, that wasn't . . . you weren't prohibited from that argument. No. Our point is that the judge, through that charge, interfered with the jury's assessment of the evidence. Assessment of the evidence is the peculiar function of the jury, not the court. The court had its own opinion of the evidence, and through that charge, he implicitly communicated that view of the evidence to the jury, to this defendant's great prejudice. I would just point out that the ECAB decision, in this case, relied on the absence . . . relied on the IME examiners not having any information about that diagnosis, to conclude that his opinion that she was able to return to work was of little or no value. The jury could have looked at that and said, well, you know, we don't have any information telling us that she does not have this condition, and maybe she can't return to work based on that condition. Thank you. Good morning. May it please the Court. Michael Perry for the United States. I was trial counsel for the United States as well in this matter. Going also to this jury note issue, it's the government's position, of course, that the judge could not properly have provided the definition, and that in what he said, it was literally true. And, I also would like to point out that the case was not about the perception of pain or about the perception of her abilities. The case, by and large, hinged on her actual activities. So, whether she . . . But isn't there an intent to defraud element for at least some of the charges that were there? Well, certainly there's an intent to defraud element, Your Honor, but . . . So, if she sincerely believed that she was entitled to benefits, is it not conceivable that even if she misrepresented certain specific facts, she did not do that with the intent to get anything she wasn't entitled to? This was front and center at the trial. This was addressed in arguments to the jury, and the point being that she wouldn't have lied about all of these specific activities for so many years, unless she believed that telling the truth would have prevented her from getting the benefits. And, there are so many well-documented misrepresentations in the record about her actual activities, and there's virtually nothing about her level of pain. Why do you think the jury . . . Now, that's all fine and well if the jury bought your arguments, but here is . . . What was the first note? And, they're asking for a definition which suggests that they think there's something to this argument, that they at least want to consider her argument. And, they get not only that there's no definition, and it's not clear to me that counsel couldn't have looked up and jointly proposed a definition from a standard work that the judge could have taken judicial notice of, but they didn't do that. But, they not only don't get a definition, they get a statement that could well be read as saying it's irrelevant. Again, Your Honor, going back to the words that the judge said, I don't believe that it would be reasonable for any juror to interpret his answer as saying that all of that evidence is irrelevant. He specifically says that he doesn't know if the definition is irrelevant. As has been pointed out already this morning, the sentence before that, he says, you have to rely upon whatever the evidence has been that's been produced and that you accept. There's one other thing, Your Honor, that I would like to . . . I want to say something that's really important. Importantly, if you look at the elements of each of the charges, I don't know if it's really necessary that you have a definition of that anyway to decide the elements of each of these charges. He volunteered that as near as I can tell, and I'm not sure what he meant. Well, Your Honor, the government's position would be that it is important for the jury to understand that they should not be looking outside of the record when they're deciding this, and that's in every jury charge. It was in this jury charge . . . That's not what he's saying, or at least . . . I don't know if it's really necessary that you have a definition. That part is true, although I'm not sure why he thinks that's important. . . . of that anyway, to decide the elements of each of these charges, that their job is to take account of all the evidence. This related, and the reason for their note, one assumes, it related to one of the primary defenses in the case. Respectfully, Your Honor, this was clearly not a primary defense. It was not mentioned in opening or closing argument. It was mentioned in passing a couple of times, and it appears in a couple of documents. So this was not something that was put forward by the defense. All of the explanations that were made to the trial judge and chambers, none of them were made to the jury in terms of how this affects, at least in argument. And so I would disagree with the idea that it was front and center of the defense case. It was . . . When you said earlier that intent was front and center in the case, I think you said that toward the beginning of your argument. You meant just the issue of whether she had fraudulent intent or not, and not whether this particular disorder vitiated her ability to form intent or distorted her perceptions. Yes, Your Honor, and if I misspoke, I apologize. That is what I meant, that the idea that she needed to have intent to defraud the government was front and center, but this issue of atypical affective disorder was not. There's one thing I would like to point out. So what's your view of why the jury, in their very first note, asked for this definition? If they weren't focused on the point that we've just been talking about, because you think that while intent was the issue, it wasn't that specific aspect of intent, why are they asking this? This is a bit of conjecture because there's no way to know why they asked it, but the ECAB decision was discussed at some length. The defense counsel was urging the jury to rely on the ECAB's determination, the administrative determination, and so in my summation, I urged the jury, I believe it was in my rebuttal summation, I urged the jury to go ahead and read the decision and was pointing out that it does not weigh in on the surveillance video or even on whether she committed fraud, that it made a very narrow decision. And then they went back, they deliberated for a few hours, and then they came back with this question about the meaning of a term that's in that decision. I believe that's what happened, although there's no way to know. There's one other thing I'd like to point out. May I turn to what happened after the instruction was given? Mr. Connolly said there was a request for a curative instruction. Now as I read the record at A731-32, A34-35 of the transcript, defense counsel raises the question, sort of makes an objection to this, it's not necessary statement, and then says, we would ask for some sort of curative instruction. And as far as I can see in the rest of the paragraph of speaking, there's some general discussion of why atypical affective disorder might have affected something in the case, but there is no formulation of any particular curative instruction. Am I missing something from your recollection or from your reading of the record? Is there some formulated curative instruction that was requested by the defense? To my memory and to my reading of the record, there was not. In fact, it was unclear at the time, and it is still unclear to me what defense counsel believes the judge should have said. What seems to have gone on is that as soon as the jury put this note in, defense counsel regretted not making this a real issue at trial and essentially wanted a do-over in effect to put this issue at front and center, which would have been improper. Well, sure. I mean, that's the answer to Judge Rakoff's question, isn't it? Why did the jury ask the question? Because the jury picked this up, which is something that happens in cases. Jurors pick up things that the lawyers missed. That's why we have jury trials. And so they were interested in this subject, and the judge told them accurately, I cannot define it for you. And secondly, what you should look at is the evidence in the record, and I don't think you need the definition. But the jury was focused on this as something that might be relevant. Yes, Your Honor. There's also one important thing. I neglected to cite this in my brief. I apologize. But it is in the appendix. It's in the record. This is appendix page 715 and 716. As soon as the judge finished his jury charge, he asked the jury, do you have any questions about my instructions? And one of the jurors raised the hand and said, I'm quoting from A715 going into A716 from the defendant's appendix, we were shown a lot of writing up on the screens, and there was some writing that we could see, but our attention wasn't brought to it. So is the fact that that other page might be in evidence, is that something we can use in our decision? And the judge asks a couple of clarification questions, and eventually his answer on page A716 in the appendix, the judge says, they didn't argue every point in the exhibits. They brought to your attention what they believed is more relevant and probative. Each side does that, but you have all the exhibits. If there's something you wish to look at and pursue further, you may do so. Of course, it's in evidence. And I apologize that I didn't put that in my brief. It is in the appendix. I do believe it at least has some relevance to this discussion that the jury had another data point on which they understood that they could look at all of the evidence. One thing also that hasn't been mentioned this morning, there was the first exhibit, I believe it was exhibit one, was more than 3,000 pages. It was her administrative record. We only went through a small fraction of the pages, and so that was something else that was addressed, that the jury could look at all of that. They could look at the other video that wasn't talked about, but we weren't going to extend the trial by another week to go through the record laboriously that way. So I think this shows that the jury had every right and ability to look at this more closely, what was in the record. And also I think it's important, they did deliberate for several more hours after this jury note came down. I see my time is expiring. I will urge this court to affirm the conviction in all respects, including on the sufficiency of the evidence, which was not discussed this morning. Thank you. I don't want to be redundant, and I don't think I addressed this too directly, but a primary, a very significant aspect of the defense was that Ms. Gutman did not have the intent to defraud the government, and I submit that the jury could have thought that this atypical affective disorder was relevant to that issue of whether she did have the . . . Your adversary just said that you didn't argue that on your submission. Is that true? I'm not sure what submission are you talking about? That you didn't argue anything about the atypical . . . To the jury? Yes. Yes, that's substantially true. Your argument is that even though this wasn't a central part of the defense at trial, the absence of evidence as to the definition of this disorder could have been taken by the jury into account in its deliberations to suggest that the government failed in its burden of proof and that this instruction prevented the jury from doing that or created an obstacle and your client suffered . . . Created an obstacle. I'm not arguing that the jury could not have possibly overcome it, but the judge's place is not to formulate its own opinion about the evidence and then place obstacles in the jury's way calculated to lead the jury to reach the conclusion that the judge thinks the jury should reach. In respect to the atypical affective disorder evidence, while the defense did not directly argue that to the jury, they did argue to the jury that the jury should consider the ECAB decision from November 2015 reinstating her benefits, that decision relied on the fact that the IME doctor was not informed of this atypical affective disorder diagnosis. Indirectly, not explicitly, the defense did rely on this atypical affective disorder and the judge, in effect, I don't want to say he negated any possibility that the jury would also rely on that, but he certainly cast his weight against the jury considering that and finding a reasonable doubt based on the absence . . . Can I just ask you, Mr. Connolly, the question? I asked Mr. Perry just to make sure I understand the record. You had referred to a request for clarification after the instruction was given, and am I right that that passage on 730.132 of the appendix is pretty much the extent of the colloquy from the defense side on that? There's not a specific request. I'd like you to say this to the jury now. Is there, or am I missing something? I regret to say that I didn't explicitly look at that. I should have in preparing for this, so I don't remember for sure, so I don't want to say. You may be right. We have the records. I thought they did get into it a little bit more explicitly, but the court was pretty fast to say, you know, we're not going to . . . I didn't make any mistake. Because he really misunderstood. He thought that because there was no charge in the indictment relating to that particular phrase, he thought it was irrelevant. Yes. I submit the record's clear that he just misunderstood the significance. He didn't understand your argument. Yes. Thank you, Your Honors. Thank you.